Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| MARÍA CORTÉS PORRATA<br><br>Recurrida<br><br>V.<br><br>CAPARRA CENTER ASSOCIATES, LLC H/N/C SAN PATRICIO PLAZA< ADOLFO L. GONZÁLEZ SANTINI: ASEGURADORA "ABC"<br><br>Peticionarios | KLCE202401070 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2022CV01719<br><br>Sala: 505<br><br>Sobre: Discrimen por Impedimento de Salud, Ley Núm. 44-1985, Represalias en el Empleo, Acoso Laboral, Ley Núm. 169-2014, Ley Núm. 90-2020, Violación de Derechos Constitucionales, según el Articulo II, secciones 1, 4, 6, 7, 8, Ley Núm. 91-1996 |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

Brignoni Mártir, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 24 de octubre de 2024.

Comparece ante nos, Caparra Center Associates LLC (en adelante, "CCA"). Su comparecencia es a los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida el 22 de julio de 2024 y notificada el 23 de julio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la referida determinación, dicho tribunal declaró *No Ha Lugar* la "*Moción Solicitando Sentencia Sumaria Parcial al Amparo de la Regla 36 de Procedimiento Civil*," presentada por María Cortés Porrata (en lo sucesivo, "la recurrida") y la "*Moción de Sentencia Sumaria*," presentada por CCA. En consecuencia, ordenó la continuación de los procedimientos.

Por los fundamentos que expondremos a continuación, *denegamos* el recurso presentado.

**I.**

El 4 de abril de 2022, la recurrida presentó una "*Querella"* ante el foro primario.[1] Expresó, que el 20 de mayo de 2021 fue contratada por CCA para trabajar en la posición de Asistente Ejecutiva del presidente de la referida CCA, ingeniero Adolfo L. González Santini (en adelante, "señor González"). Relató, que el 10 de diciembre de 2021 fue despedida de su cargo sin justificación. Sobre el particular, sostuvo que su despido fue uno discriminatorio y en represalia, debido a la condición de salud mental que padecía. Especificó, que los actos discriminatorios en su contra comenzaron luego de la conversación que tuvo con la "*CFO & Senior VicePresident*" de CCA, la señora Michelle Montoto, (en los sucesivo, "señora Montoto"). Según expuso, en dicha conversación reveló que había intentado atentar contra su vida, lo cual fue utilizado para discriminarle y ejercer actos de represalia.

Arguyó, que dichas actuaciones fueron ejecutadas por CCA a través del señor González. Argumentó, que se le creó falsamente un récord de malas ejecutorias, seguido de una evaluación mal intencionada tras la cual fue despedida. Añadió, que dado al estado de su salud mental tuvo que ser hospitalizada. Esgrimió, que a pesar de ello asistía a su trabajo y realizaba las tareas de forma diligente y sin amonestaciones. A raíz de estos hechos, incluyó en su "*Querella*" varias causas de acción. Estas fueron por represalia; discrimen por impedimento; y daños y perjuicios por acoso laboral. Finalmente, peticionó la reinstalación a su empleo con los beneficios correspondientes; el pago de los salarios dejados de devengar; el pago de una doble penalidad; el resarcimiento en daños; honorarios de abogado; y la imposición de paga futura y mesada como remedios alternativos.

---

[1] Cabe destacar, que el referido pleito se instó al amparo la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 et seq. Sin embargo, el 21 de junio de 2022 el foro a quo notificó una "*Orden"* mediante la cual los procedimientos se convirtieron en unos de naturaleza ordinaria.

En respuesta, el 22 de abril de 2022, la CCA y el señor González[2] presentaron una "*Contestación a Querella y Moción de Desestimación.*" En lo atinente, admitieron que la recurrida fue contratada para trabajar en CCA en la fecha indicada en la "*Querella.*" Añadieron, que la referida recurrida se sometió a un periodo probatorio que tenía como fecha de culminación el 18 de febrero de 2022. Alegaron, que ella fue despedida el 10 de diciembre de 2021 dentro del periodo probatorio, debido a que no aprobó el referido tiempo de prueba. Agregaron, que dicho despido no quedada cubierto por los remedios provistos por la Ley de Indemnización por despido sin Justa Causa, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185 et seq. Además, sostuvieron que no discriminaron a la recurrida ni actuaron de una forma culposa, negligente o ilegal.

De igual modo, negaron que la recurrida padeciera de alguna condición mental. Agregaron, que tampoco ella había presentado evidencia al respecto, más allá de la entrega de dos (2) cartas de alta médica que se limitaban a autorizar su regreso al trabajo. A tenor de ello, sostuvieron que nunca peticionó acomodo razonable alguno. Además, alegaron que el intento de suicidio y la posterior hospitalización fueron eventos divulgados por los propios dichos de la recurrida.

De otra parte, arguyeron que la referida recurrida fue debidamente adiestrada para ejercer sus funciones laborales. A pesar de ello, esgrimieron que ella no lograba realizar las tareas esenciales de su puesto con o sin acomodo razonable. Añadieron, que interrumpía las funciones de sus compañeros para solicitarles ayuda. Asimismo, sostuvieron que era una persona que tenía pocas destrezas de redacción y cometía actos impropios contra sus compañeros. Finalmente

---

[2] El señor González se había incluido en la "*Querella*" como parte codemandada. No obstante, el 4 de noviembre de 2022, la representación legal de la recurrida presentó una "*Moción Informando Desistimiento Parcial.*" Esto, a los efectos de solicitar el desistimiento con perjuicio de la causa de acción contra el señor González. En atención de ello, el 7 de noviembre de 2022, el foro recurrido emitió una "*Sentencia Parcial Enmendada.*" Mediante esta, declaró *Ha Lugar* la *Moción Informando Desistimiento Parcial.*"

peticionaron la desestimación de la *"Querella"* y la imposición de costas y honorarios de abogado.

Así las cosas, el 10 de octubre de 2023, la recurrida presentó una "*Moción Solicitando Sentencia Sumaria Parcial al Amparo de la Regla 36 de Procedimiento Civil.*" [3] Reiteró, que el trato hacia ella se tornó discriminatorio desde que divulgó su estado de salud mental. Consecuentemente, sostuvo que fue mal evaluada y despedida. A la luz de lo anterior, solicitó que se dictara sentencia sumaria parcial mediante la cual se determinara que su despido fue uno ilegal, discriminatorio y en represalia. Particularizó, que el 24 de octubre de 2021 atentó contra su vida a través del consumo de pastillas y alcohol, por lo cual fue traslada al Hospital. Expresó, que al día siguiente se efectuó la aludida conversación con la señora Montoto sobre su intento de suicidio. Indicó, que ese mismo día realizó las tareas laborales que tenía por ejecutar y posteriormente se retiró de su trabajo. Añadió, que la señora Montoto le comunicó a su esposo que para que pudiera regresar a trabajar debía presentar un certificado médico.

Así pues, sostuvo que fue recluida en el Hospital San Juan Capestrano desde el 26 de octubre de 2021 hasta el 31 de octubre de 2021. Argumentó, que sus condiciones de salud son bulimia nerviosa, depresión mayor severa y ansiedad. De otra parte, sostuvo que las actuaciones de CCA sustentan sus alegaciones de discrimen. Toda vez que, fue despedida el 10 de diciembre de 2021, al amparo de una evaluación negativa. Agregó, que CCA conocía de su estado de salud mental. En virtud de lo expuesto, solicitó que se dictara sentencia sumaria parcial a su favor a tenor de lo dispuesto en la Ley que Prohíbe el Discrimen contra las Personas con Impedimentos, Ley Núm. 44 de 2 de

---

[3] Para sustentar la procedencia de su moción incluyó la siguiente prueba documental: Documento intitulado "*Oferta de Empleo*;" "*Evaluación de 10 de diciembre de 2021*;" "*Liquidación*;" "*Contestación Requerimiento de Admisiones CCA*;" Mensajes de texto del 25 de octubre de 2021; Mensaje de texto sobre felicitación por buen trabajo del 4 de agosto de 2021; Mensaje de texto sobre felicitación por buen trabajo del mes de agosto; "*Deposición Michelle Montoto*;" "*Deposición parte Demandante*;" "*Continuación Deposición Demandante*;" "*Expediente Médico San Pablo*;" "*Expediente Médico San Juan Capestrano*;" Mensaje de Texto de 25 de octubre de 2021; "*Expediente de Siquiatra Dr. Martínez.*"

julio de 1985, según enmendada, 1 LPRA sec. 501 et seq; y la Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA sec. 194 et. seq.

Por su parte, el 20 de octubre de 2023, CCA presentó también una "*Moción de Sentencia Sumaria.*"[4] Adujo, que la recurrida no agotó el procedimiento interno que se había establecido para presentar asuntos de discrimen o de represalia. Añadió, que la recurrida no logró demostrar un caso *prima facie* de represalia ni de acoso laboral o discrimen por incapacidad. Particularizó, que la conversación que tuvo la referida parte con la señora Montoto no versó sobre una expresión protegida. Toda vez que, no abordó temas de negocios de CCA ni fue el resultado del requerimiento de algún foro.  Reiteró, que el despido se fundamentó en el hecho de que la recurrida no superó el periodo probatorio. Esto así, porque carecía de la aptitud y el conocimiento necesarios para la posición que ocupaba.

Agregó, que la recurrida abandonó el tratamiento para su alegada condición mental y continuó agravando la misma mediante el uso de cannabis y bebidas embriagantes. En cuanto al despido de la referida recurrida, sostuvo que ella solicitó en fecha de 6 de diciembre de 2021

---

[4] Para sustentar la procedencia de su moción incluyó la siguiente prueba documental: "*Primer Requerimiento de Admisiones y Solicitud de Producción de Documentos*" cursado a la recurrida; "*Contestación a Requerimiento de Admisiones;*" "*Toma de Deposición de: María Teresa Cortés Porrata*;" "*Toma de Deposición de: María Teresa Cortés Porrata (Continuación)*;" "*Oferta de Empleo*" dirigida a María Cortés; Documento intitulado "*Progress Notes*;" "*Manual del Empleado Caparra Center Associates, LLC*;" Documento intitulado "*Acuse de Recibo*;" Certificado otorgado a María Teresa Cortés; "*Transcripción de Deposición Oral de Michelle Montoto Ramírez*;" Documento intitulado "*Things I do- Miguel A. González*;" Documento intitulado "*Reminders*;" Documento intitulado "*Nomenclaturas*;" "*Lista de Deberes - OFIC. Sr. Charneco diciembre 2010*;" "*Instrucciones Reunión Junta de Administración*;" Mensaje de texto de 25 de octubre de 2021; "*Carta de Alta*" Nota Médica de Psiquiatra; "*Identificación de Paciente Cannabis Medicinal*;" "*Evaluación de Periodo Probatorio*" de María Teresa Cortés; Documento intitulado "*Solicitud de Licencia*;" "*Oferta de Empleo*" dirigida a Natalia Rivera Hernández; "*Oferta de Empleo*" dirigida a Mahara Ruiz Veray; correo electrónico sobre "*Listado de Responsabilidades*;" correo electrónico sobre "*Oriental Bank/ Visita Centro Comercial*;" correo electrónico sobre "*Junta de Directores – Caguas Mini – Centro, LLC*;" correo electrónico sobre "*COI Construcción – Caparra Hills, LLC*;" correo electrónico sobre "*Visita Showroom AFD*;" correo electrónico sobre "*Reunión Socios CMC*;" correo electrónico sobre "*Proyecto*;" correo electrónico de 8 de diciembre de 2021; correo electrónico de 24 de noviembre de 2021; correo electrónico sobre "*Reunión de Socios CMC*;" correo electrónico sobre "*Almuerzo Jorge hidalgo hoy*;" correo electrónico sobre "*Proyecto*" de 22 de junio de 2021; correo electrónico sobre "*Recordatorio Reunión Anual de Socios-CMC*;" "*Recomendación Médica para el Uso de Cannabis Medicinal;*" "*Protocolo Interno para Atender Querellas sobre Acosos Laboral*;"

una reunión con el señor González. A los efectos de obtener una retroalimentación para mejorar en su empleo. Indicó, que en ese día ambas partes concluyeron que la relación de empleo había terminado. En virtud de lo expuesto, peticionó que se dictara sentencia sumaria a su favor. Consecuentemente, solicitó la desestimación de las causas de acción de la recurrida.

Posteriormente, el 31 de octubre de 2023, CCA presentó una "*Oposición a Moción Solicitando Sentencia Sumaria Parcial Moción de la Parte Querellante*." Contrario a lo aducido por la recurrida expuso como hecho en controversia la ejecutoria de la referida parte en relación con la diligencia empleada en sus tareas laborales. Además, reiteró que el despido de la recurrida no fue por motivos discriminatorios, sino por las razones legitimas de no aprobar el periodo probatorio. Añadió, que la recurrida incluyó en su "*Moción Solicitando Sentencia Sumaria Parcial al Amparo de la Regla 36 de Procedimiento Civil*" una serie de hechos que carecían de especificidad y que no estaban sustentados con evidencia. De otra parte, reprodujo los planteamientos que había esbozado en su "*Moción de Sentencia Sumaria.*" De esta manera, reiteró la improcedencia de las causas de acción incoadas por la recurrida. Consecuentemente, solicitó la desestimación de la "*Querella*" y peticionó la imposición del pago de costas, intereses y honorarios de abogado a su favor.

Por su parte, el 27 de noviembre de 2023, la recurrida presentó una "*Oposición a Moción de Sentencia Sumaria*." Precisó, que CCA le despidió de una forma discriminatoria luego de que ella había renunciado. Cónsono con lo anterior, reiteró que el único motivo de su despido fue su condición de salud mental. Agregó, que CCA fabricó una evaluación nefasta para apoyar la legitimidad de dicho despido. También indicó, que las referencias que esbozó CCA en cuanto a su uso de cannabis establecían otra forma de discrimen por el uso autorizado de cannabis medicinal. Además, expuso la existencia de controversia en los siguientes hechos: la realidad de un despido discriminatorio; la constitución de actos

de represalia; la existencia de una violación de CCA a la normativa que protege las personas con impedimentos; y la existencia de discrimen por uso de cannabis medicinal. A su vez, resaltó que CCA incluyó en su escrito de "*Moción de Sentencia Sumaria*" hechos que no estaban sustentados con prueba. De otra parte, la recurrida incorporó a su escrito los argumentos que había esbozado en su "*Moción Solicitando Sentencia Sumaria Parcial al Amparo de la Regla 36 de Procedimiento Civil.*" Finalmente, solicitó al foro recurrido que declarara *Ha Lugar* la "*Moción Solicitando Sentencia Sumaria Parcial al Amparo de la Regla 36 de Procedimiento Civil*" y *No Ha Lugar* la "*Moción de Sentencia Sumaria,*" presentada por CCA.

En atención a los escritos presentados, el 23 de julio de 2024, el foro recurrido notificó una "*Resolución y Orden.*" Mediante esta, declaró *No Ha Lugar* tanto la "*Moción Solicitando Sentencia Sumaria Parcial al Amparo de la Regla 36 de Procedimiento Civil,*" presentada por la recurrida como la "*Moción de Sentencia Sumaria,*" presentada por CCA. En consecuencia, ordenó la continuación de los procedimientos. El referido foro incorporó en la "*Resolución y Orden*" las siguientes determinaciones de hechos incontrovertidos:

1. La querellante padece de depresión mayor severa y ansiedad.

2. Desde el año 2016, la querellante recibe tratamiento del psiquiatra, Dr. Martínez Schmidt.

3. El 20 de mayo de 2021, la querellante, María Teresa Cortés Porrata, aceptó una oferta de empleo de la querellada, Caparra Center Associates, LLC (CCA), para la posición de Asistente Ejecutiva, plaza regular, a tiempo completo, con clasificación de "no exenta", con salario básico de $22.00 por hora, pagaderos bisemanalmente.

4. Según la Oferta de Empleo, la permanencia del empleo de la querellante estaba sujeta a la aprobación de un periodo probatorio de doscientos setenta días calendarios a partir de la fecha de empleo.

5. El periodo probatorio de la querellante venció el 18 de febrero de 2022.

6. Según la Oferta de Empleo, como Asistente Ejecutiva, la querellante se reportaría directamente al Presidente y Vicepresidente de Operaciones.

7. La querellante comenzó a trabajar para CCA el 24 de mayo de 2021.

8. CCA tiene un *Manual de Empleados* que incluye una *Política* en Contra *del Discrimen y la Represalia* y un *Procedimiento para la radicación de querellas por Discrimen o Represalia*, entre otras.

9. El 24 de mayo de 2021, la querellante recibió y firmó un acuse de recibo certificando la entrega del *Manual de Empleados.*

10. CCA tiene un Protocolo contra el acoso laboral en el empleo, el cual contiene el procedimiento para la radicación de posibles situaciones de acoso laboral.

11. *El Manual de Empleados* de CCA establece que la empresa podrá terminar la relación de empleo con un empleado en Periodo Probatorio, en cualquier momento durante el periodo probatorio.

12. El *Manual de Empleados* de CCA establece lo siguiente:

La Empresa mantendrá en un expediente confidencial la información relacionada con la identidad de género u orientación sexual, obtenida durante cualquier gestión oficial en el empleo, la documentación relacionada a alguna situación de discrimen o represalia, las certificaciones médicas del empleado, documentación bajo las licencias por incapacidad ocupacional o bajo SINOT, la documentación provista [sic] bajo la protección de ADA, documentación que tenga el seguro social del empleado y cualquier otra información confidencial del empleado.

13. El *Manual de Empleados* de CCA define el concepto "conducta discriminatoria" de la siguiente manera:

La conducta discriminatoria prohibida mediante la presente política incluye, pero no se limita a, conducta física o verbal, todo tipo de comunicaciones ya sea por gestos, verbales o escritos, mediante cualquier medio de comunicación (entiéndase, digital, electrónica, telefónica, textos, correos electrónicos, redes sociales, "chats", etc.), así como los chistes o apodos que sean relacionados con la edad, raza, color, sexo, credo, religión, ideas o prácticas religiosas, orientación o preferencia sexual, identidad de género, genética o información genética, origen nacional, matrimonio, impedimento físico y/o mental, status de veterano, veteranos de Vietnam, condición social, afiliación política, ideas políticas, o por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho, así como cualquier otro motivo prohibido por ley de un empleado, candidato a empleo, visitante, invitado, suplidor o agente.

14. El *Manual de Empleados* de CCA estable lo siguiente en cuanto a las represalias:

La presente política en contra del discrimen prohíbe, además, la represalia contra cualquier empleado que informe un incidente de discrimen, represalia o que participe en una investigación de tales informes o que informe una situación o incidente relacionados a su empleo o condiciones de empleo. En la eventualidad de cualquier posible represalia o amenaza de represalia, el empleado debe informar de tal acción inmediatamente a su supervisor y/o al Principal Oficial Ejecutivo de Finanzas de la Empresa. Los informes de represalia serán investigados de conformidad al proceso establecido en este Manual.

15. El *Manual de Empleados* de CCA estable que la empresa no será responsable por los daños que sufra un empleado o candidato a empleo por discrimen, hostigamiento sexual o represalias, si el empleado o candidato a empleo no le notificó a la Empresa la alegada conducta ilegal, en cumplimiento con el *Procedimiento Para Manejar Situaciones o Querellas de Discrimen, Represalia u Hostigamiento Sexual en el Empleo*.

16. En cuanto a las solicitudes de Acomodo Razonable por Incapacidad Física o Mental, el *Manual de Empleados* de CCA establece que:

    [e]s la obligación de todo empleado o candidato a empleo cualificado con una incapacidad física o mental protegida por ley, que requiere un acomodo razonable notificarle a la Empresa por escrito la necesidad del acomodo razonable y proveerle la documentación médica acreditativa sobre su alegada incapacidad física y/o mental, incluyendo limitaciones físicas o mentales, si alguna y las alternativas de acomodo razonables recomendadas por su médico. El intercambio de dicha documentación e información es un requisito esencial para que la Empresa considere la solicitud de acomodo razonable de un empleado o candidato a empleo. Una vez la Empresa reciba dicha documentación procederá a evaluar la misma, así como la solicitud del empleado o candidato a empleo e iniciará un proceso interactivo con el empleado o candidato a empleo, y de ser necesario con su médico sobre dicha solicitud y/o documentación.

17. El 29 de septiembre la querellante participó en un taller *sobre Acoso Laboral, Hostigamiento Sexual y Violencia Doméstica*.

18. El Ing. Adolfo González es primo del esposo de la querellante.

19. La Sra. Diane Arroyo ocupó previamente la posición de la querellante en CCA.

20. Durante las primeras semanas de su empleo, Diane Arroyo orientó a la querellante y le proveyó adiestramiento durante varios días sobre las funciones del puesto de forma presencial y además, le proveyó a la querellante su teléfono personal y correo electrónico.

21. El adiestramiento de Diane Arroyo a la querellante sobre las funciones del puesto duró dos semanas e incluyó, entre otras cosas, las tareas en el listado, así como dónde localizar y archivar los documentos, y el contenido, manejo y búsqueda en Sharepoint, etc.

22. La querellante era responsable de manejar la agenda del Ing. Adolfo González y de Miguel González.

23. Algunas de las funciones esenciales de la querellante como *Asistente Administrativa* incluían:

    a. Redactar correspondencia rutinaria
    b. Preparar informes y correspondencia a enviar, incluyendo informes de gastos y correos electrónico
    c. Contestar y canalizar llamadas a los ejecutivos, y hacer arreglos para llamadas en conferencia
    d. Apoyar las funciones de recepción y coordinar con otros compañeros para asegurarse que el cuadro telefónico siempre estaba atendido en horas laborables

e. Organizar y mantener archivos físicos y electrónicos del departamento de operaciones y asuntos ejecutivos

24. El psiquiatra de la querellante desde el 23 de junio de 2016 y durante el empleo de esta en CCA era el Dr. Fernando Martínez Schmidt.

25. Según el expediente del Dr. Fernando Martínez Schmidt el tratamiento para la condición de la querellante consistía en citas y farmacoterapia, mediante medicamentos para la depresión, ansiolíticos y para dormir.

26. La querellante obtuvo su licencia para el uso de cannabis medicinal con vigencia del 19 de mayo de 2021 al 19 de mayo de 2022 de otro médico para desórdenes de ansiedad.

27. Desde el 14 de septiembre de 2021 al 25 de octubre de 2021, la querellante dejó de tomarse los medicamentos recetados por su psiquiatra para la depresión y ansiedad.

28. El 22 de octubre de 2021, la querellante exhibió conducta suicida e ingirió el medicamento Xanax y tomó alcohol.

29. El 24 de octubre de 2021, la querellante fue admitida al Hospital HIMA San Pablo.

30. Según el expediente médico del Hospital HIMA San Pablo, el motivo de la hospitalización de la querellante fue:

    [p]atient comes presenting hypoactivity and now referring that had took approximately 10 ambien, Xanax 0.5 mg approx. 10 and hard liquor for 3 drinks. She refers she performed this attempt due to been unwilling to live, she has multiple personal problems and has been unable to management (sic), she denies othersymptoms at this time.

31. El 25 de octubre de 2021, contrario a las recomendaciones médicas, la querellante optó por abandonar el hospital HIMA San Pablo.

32. El médico que atendió a la querellante en la Sala de Emergencia del Hospital HIMA San Pablo escribió la siguiente nota en el expediente de la querellante a las 12:41 am del 25 de octubre de 2021:

    Patient refused any treatment and did not want blood test to be done she wanted to leave and wanted her husband to sign for her he refused to sign and wanted her to get treatment she was alert and OX3. Later she pulled her IVs and walked out of the ED. I recommended the husband to get a 408 for involuntary restrain and hospitalization.

33. Ese domingo, 24 de octubre de 2021, a las 12:47 am el esposo de la querellante, el Sr. Franco González, le escribió al Ing. González Santini el siguiente mensaje de texto:

    Buenas noches, Tito, ¡¡esperando te encuentres bien!! Disculpa te moleste tan tarde y que te escriba yo pero estoy en emergencia de San Pablo Bayamón con Tere! Le dieron unos mareos en la casa y se callo [sic] al piso….no sabemos que es pero al menos estamos en el hospital!! No te podía escribir porque estaba bien preocupada por unos reportes…mas[sic] que nada!! De parte de ella, disculpa la inconveniencia!! Te mantengo al tanto!! Un abrazo!!! Btw….Es Franco

34. El Ing. González Santini le envió el siguiente mensaje de texto al esposo de la querellante:

   Hola, Franco. Espero que Tere este bien. Dile que no se preocupe por el trabajo, ya que dejo todo set. Me mantienes al tanto pls. Gracias por avisar. Un abrazo

35. El 25 de octubre de 2021, la querellante se presentó a su lugar de empleo para culminar una tarea que consistió en preparar más de 50 carpetas, enviarlas a compaginar y copiar con el material que se utilizaría para la reunión del Comité Administrativo y para la Reunión de Socios y de la Junta De Directores de Caparra Center Associates, LLC y todas sus subsidiarias, a celebrarse los días 27 y 28 de octubre de 2021, respectivamente.

36. El 25 de octubre de 2021, la querellante le explicó a la Sra. Michelle Montoto, Directora de Finanzas de CCA, sobre el atentado contra su vida y le expresó que, a pesar de esto, fue la tarea que dejó pendiente para cumplir con dicha responsabilidad.

37. Michelle Montoto le indicó a la querellante que no podía estar en la oficina y que tenía que irse, y buscar ayuda. Pero ésta insistió en que se sentiría mejor si terminaba el trabajo para las reuniones de la junta pautadas para los días 27 y 28 de octubre de 2021.

38. La Sra. Montoto afirmó que ordenó a que las compañeras de trabajo ayudaran a la parte querellante, el 25 de octubre de 2021, debido a "que se veía mal; llorosa; despeinada; se veía cansada, como si no hubiera dormido".

39. La Sra. Montoto declaró que ambos supervisores de la querellante habían traído la preocupación de que la querellante se mostraba "ansiosa".

40. El 25 de octubre de 2021, a las 5:40 pm, la Sra. Michelle Montoto le escribió al esposo de la parte querellante, Sr. Franco González, por mensaje de texto a su celular, que la querellante había salido del trabajo que la notaba más tranquila y que necesitaba un certificado médico para regresar a CCA.

41. El 26 de octubre de 2021, la querellante no regresó a trabajar, pero se personó a las inmediaciones de CCA para que la Sra. Nanny Jiménez le bajara parte del trabajo que quedaba por terminar.

42. El 26 de octubre de 2021, la querellante fue admitida al Hospital San Juan Capestrano.

43. Durante la Evaluación Psiquiátrica de la querellante, en el Hospital San Juan Capestrano, la querellante indicó, entre otras cosas, lo siguiente:

   Al momento de evaluación, la paciente identifica como estresores principales: conflictos de relaciones interpersonales con esposo, muerte de suegra reciente y haber descontinuado tratamiento psiquiátrico hace dos meses atrás. A raíz de estos estresores la paciente reporta una de evolución de síntomas depresivos severos, y ansiedad que consisten en: animo deprimido, llanto, sentimientos de minusvalía, desesperanza, culpa, pobre apetito, aislamiento, insomnio, perdida de interés en actividades diarias, fatiga, pobre tolerancia a la frustración, pobre manejo de emociones, irritabilidad, deseo de muerte e ideas suicidas con plan de intoxicarse con medicamentos.

44. El 27 de octubre de 2021, el esposo de la querellante, el Sr. Francisco González, le envió el siguiente mensaje de texto al Ing. González Santini:

    Buenos días, Tito, Te llame pero me acorde de lo ocupado debes estar!! Solo quería dejarte saber que Tere voluntariamente busco ayuda y esta al momento en San Juan de Capestrano de Trujillo Alto donde estará de 5-7 días! Solo quería que lo supieses que esta en el mejor lugar para ayuda y que no estará allá con ustedes en lo que. Un fuerte abrazo!

45. El 27 de octubre de 2021, el Ing. González le envió al Sr. Francisco González el siguiente mensaje de texto:

    Hola Franco, Gracias por informar. Espero que Tere se recupere pronto. Te llamo tan pronto pueda. Un abrazo

46. El 31 de octubre de 2021, la querellante fue dada de alta del Hospital San Juan Capestrano.

47. Previo a regresar a trabajar, la querellante le entregó a CCA un *Certificado Médico* firmado por el Dr. Martínez Schmidt, el 1 de noviembre de 2021.

48. El *Certificado Médico* del 1 de noviembre de 2021 lee de la siguiente manera:

    A quien pueda interesar:
    Favor de excusar a mi paciente de su trabajo desde 11/1/21 hasta 11/3/21. Puede regresar a su trabajo el 11/4/21. Gracias

49. El *Certificado Médico* del Dr. Fernando Martínez del 1 de noviembre de 2021 fue el último certificado médico que la querellante le entregó a CCA, antes de su despido, el 10 de diciembre de 2021.

50. La *Carta de Alta* del Hospital San Juan Capestrano no incluyó recomendación de acomodo en el empleo a la querellante.

51. A su regreso al empleo, el 4 de noviembre de 2021, la querellante no le pidió apoyo u orientación a CCA.

52. La querellante les contó a sus compañeras de trabajo, Nanny, Mara, Natalia y María del Mar sobre su hospitalización en el Hospital San Juan Capestrano.

53. El 3 de diciembre de 2021, CCA le pagó a la querellante $750.00, por concepto de bono de Navidad, pese a que la querellante no cumplió con el requisito de trabajar 700 horas para recibirlo.

54. El 3 de diciembre de 2021, CCA celebró una fiesta de Navidad para sus empleados.

55. La querellante asistió a la fiesta de Navidad celebrada por CCA, el 3 de diciembre de 2021.

56. El 6 de diciembre de 2021, la querellante entró a la oficina del Ing. González para hablar con él y le dijo que "esto no está funcionando" a lo que el Ing. González le contestó: "dame hasta el viernes".

57. Los días 6 y 7 de diciembre de 2021, la querellante le envió al Ing. González, mediante correo electrónico, un listado de las responsabilidades de su puesto.

58. No existe solicitud de renuncia alguna en el récord de personal de la querellante.

59. Mientras laboró como empleada de CCA, la querellante nunca presentó una queja interna ante CCA sobre maltrato o acoso laboral y discrimen por incapacidad.

60. La querellante no radicó una querella ante la Comisión de Oportunidad en el Empleo (EEOC, por sus siglas en inglés) o ante la Unidad Anti-discrimen del Departamento del Trabajo de Puerto Rico, en contra de CCA o el Ing. González, alegando discrimen por incapacidad mental, antes de radicar la querella de epígrafe.

61. CCA no le cambió a la querellante el salario, ni el área de trabajo.

62. CCA le permitió a la querellante modificar su horario del periodo de 9 am a 6pm, a 8 am a 5 pm.

63. El Ing. González Santini no la disciplinó, gritó, alzó la voz, faltó el respeto, ni la cambió de área de trabajo.

64. El 10 de diciembre de 2021, CCA emitió una Evaluación de Periodo Probatorio, mediante la cual cualificó las ejecuciones de la querellante de la siguiente manera:

   a. Asistencia y puntualidad: muy bueno
   b. Conocimiento técnico del área: no satisfactorio
   c. Planificación y organización: no satisfactorio
   d. Trabajo en equipo, enfoque a resultados: no satisfactorio
   e. Calidad de trabajo: no satisfactorio
   f. Flexibilidad: no satisfactorio
   g. Estilo de liderazgo/influencia: no satisfactorio
   h. Comunicación: no satisfactorio

65. Algunas observaciones incluidas en la Evaluación de Periodo Probatorio, sobre la labor de la querellante son:

   a. Cometió errores recurrentes de redacción
   b. No completó algunas tareas solicitadas
   c. Solicitó a otros empleados que completaran tareas que le fueron delegadas
   d. Expresó inseguridad sobre su capacidad de completar sus tareas
   e. Expresó disgusto por su trabajo
   f. Se percibió ansiosa al llevar el registro del quórum de una reunión
   g. El 22 de octubre de 2021, luego de cometer un error de impresión, dispuso abruptamente de cientos de papeles para comenzar la tarea nuevamente
   h. El 25 de octubre de 2021, envió comunicaciones mediante correo electrónico con errores ortográficos, no incluyó los anejos correspondientes en las comunicaciones electrónicas y se reportó al trabajo portando un brazalete de hospital. Añadió que ese día, la querellante mostró comportamiento ansioso, lloroso y expresó ideación suicida.

66. El 10 de diciembre de 2021, Michelle Benítez y el Ing. González se reunieron con la querellante, para discutir y entregarle a la querellante su *Evaluación de Periodo Probatorio.*

67. El 10 de diciembre de 2021, la Sra. Michelle Montoto, directora de Finanzas de CCA, le remitió una comunicación intitulada *Trámite de liquidación-No aprobación del Periodo Probatorio* a la querellante. En ella, expresó lo siguiente:

> [s]egún establecido durante la conversación que sostuvo con el Sr. Adolfo González el pasado 6 de diciembre, adjunto incluimos el cheque número 57533 por concepto de su liquidación de ingresos, para el periodo que termina hoy viernes 10 de diciembre de 2021.

A su vez, expuso los siguientes hechos en controversia:

1. Si el 6 de diciembre de 2021, la querellante renunció a su trabajo en CCA.

2. Si la querellante fue despedida de forma discriminatoria, según la Ley Núm. 44-1985, 1 LPRA sec. 501 *et seq.* y la Ley Núm. 81-1996, 29 LPRA sec. 194 *et seq.*

3. Si la querellante fue despedida como represalia, según la Ley Núm. 115-1991, 29 LPRA sec. 194 *et seq.*

4. Si las alegadas actuaciones de CCA constituyeron una violación a la *Ley de la carta de derechos de las personas con impedimentos*, Ley Núm. 238-2004, 1 LPRA sec. 512 *et seq.*

En desacuerdo, el 7 de agosto de 2024, de forma oportuna CCA presentó una "*Moción de Reconsideración.*" La referida moción fue declarada *No Ha Lugar* por el foro recurrido con fecha de notificación de 3 de septiembre de 2024. Aun en desacuerdo, el 3 de octubre de 2024, CCA compareció ante nos mediante el recurso de epígrafe. A través de dicho recurso esbozó los siguientes señalamientos de error:

> **Primer Error:** Erró el TPI al no establecer en su Resolución cual fue la actividad protegida en que alegadamente participo Cortés, al amparo de la Ley 115-1991, requerida para establecer un caso prima facie de represalia.
>
> **Segundo Error:** Erró el TPI al no resolver la alegación de falta de jurisdicción bajo la Ley 90-2020 ante el hecho incontrovertible de que Cortés nunca presento una queja interna sobre acoso laboral, ni radico una solicitud de mediación ante OMA.
>
> **Tercer Error:** Erró el TPI al no desestimar la causa de acción bajo la Ley 90-2020 ante la total ausencia de la conducta requerida para establecer un caso prima facie de acoso laboral por parte de Cortés.
>
> **Cuarto Error:** Erró el TPI al imponerle a CCA las disposiciones de la Ley 80 a la terminación de Cortés durante su periodo probatorio.
>
> **Quinto Error:** Erró el TPI al determinar que Cortés estableció un caso prima facie de discrimen por impedimento.
>
> **Sexto Error:** Erró el TPI al determinar que CCA termino la relación de empleo probatorio por motivos discriminatorios en relación con las condiciones de Cortés.
>
> **Séptimo Error:** Erró el TPI al determinar que es de aplicación de las disposiciones de la Ley 81-1996 por no existir alegación alguna de su aplicabilidad a este caso.

## II.

### A. *Certiorari:*

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.* Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

De igual modo, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, delimita los criterios para la expedición de un auto de *certiorari.* Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera Gómez v. Arcos Dorados Puerto Rico*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 2023 TSPR 145; *Rivera Gómez v. Arcos Dorados Puerto Rico*, supra; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023);

*800 Ponce de León v. American International*, 205 DPR 163, 176 (2020).

De conformidad con lo anterior, la Regla 40, *supra*, dispone los siguientes criterios:

> **A.** Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> **B.** Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> **C.** Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> **D.** Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> **E.** Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> **F.** Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> **G.** Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. Citibank v. ACBI, 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; Graciani Rodríguez v. Garage Isla Verde, LLC, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Id.; Pueblo v. Hernández Villanueva, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Id.; Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos

del caso hace un análisis liviano y la determinación resulta irrazonable. Id. pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

**B.     Sentencia Sumaria:**

La sentencia sumaria es un mecanismo procesal cuya función es permitir a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Cruz Cruz y otra v. Casa Bella Corp.* y otros, 2024 TSPR 47; *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769, 784 (2016); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento que debe seguir la parte promovente de una solicitud de sentencia sumaria. A tales efectos establece que una solicitud deberá incluir (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V., R. 36.3; *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *SLG Zapata Rivera v. J. F. Montalvo*, 189 DPR 414, 432 (2013).

De otro lado, la parte que se oponga a que se dicte sentencia sumaria está obligada a contestar la solicitud de forma detallada. *Ramos Pérez v. Univisión*, 178 DPR 200, 216 (2010). Para ello, deberá cumplir con los mismos requisitos con los que tiene que cumplir el promovente, pero, además, su solicitud deberá contener: (1) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, (2) con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal. 32 LPRA Ap. V, R. 36.3 (b) (2). Es decir, el promovido no puede descansar en meras alegaciones y afirmaciones. *Birriel Colón v. Supermercado Los Colobos,* 2023 TSPR 120. Por el contrario, debe someter evidencia sustancial de los hechos materiales que están en disputa y demostrar que tiene prueba para sustanciar sus alegaciones. *SLG Zapata Berríos v. JF Montalvo, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215. De incumplir con ello, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho. *León Torres v. Rivera, supra*, pág. 44; *SLG Zapata-Rivera v. J.F. Montalvo, supra.*

No obstante, aun en ausencia de prueba que controvierta la evidencia presentada por la parte promovente, esto no significa que procederá la moción de sentencia sumaria automáticamente, pues el tribunal no está obligado a resolver a favor del promovente. Se resolverá a favor de este si el juzgador "queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y de que, por lo tanto, una vista en los méritos resulta innecesaria". *Mun. de Añasco v. ASES et al*, 188 DPR 307, 327 (2013) (énfasis suplido). Véase, además, *Fernández Martínez v. RAD-MAN SJ, LLC*, 208 DPR 310, 337 (2021); *Jusino Figueroa v. Walgreens of San*

*Patricio*, 155 DPR 560, 578 (2001); *Piovanetti García v. Touma*, 178 DPR 745, 774 (2010).

Si la parte quien se opone a la solicitud de sentencia sumaria utiliza declaraciones juradas como su mecanismo para admitir prueba, estas se basarán en el conocimiento personal del o la declarante, además que contendrán hechos que sean admisibles y demuestren que el o la declarante esta cualificado para testificar. 32 LPRA Ap. V, R. 36.5. Por otra parte, la Regla 36.6 establece que:

Si de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, el tribunal podrá denegar la solicitud de sentencia o posponer su consideración, concediéndole a la parte promovida un término razonable para que pueda obtener las declaraciones juradas, tomar deposiciones, conseguir que la otra parte le facilite cierta evidencia o dictar cualquier otra orden que sea justa. 32 LPRA Ap. V, R. 36.6.

En suma, se dictará sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay u otra evidencia que obre en el expediente del tribunal, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente. 32 LPRA Ap. V, R. 36.3 (e); *González Meléndez v. Municipio Autónomo de San Juan,* 212 DPR 601, 611-612 (2023). Así, el criterio rector al considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales pertinentes, según alegados por las partes en sus respectivas solicitudes u oposiciones, y que solo reste aplicar el Derecho. *Rodríguez García v. UCA, supra*, pág. 941. Esta determinación debe ser guiada por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria, para evitar la privación del derecho de todo litigante a su día en corte. *Ramos Pérez v. Univisión, supra*, pág. 216 (énfasis suplido).

Igual que el Tribunal de Primera Instancia, este Tribunal de Apelaciones se rige por la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia al determinar si procede o no una sentencia sumaria. Ello quiere decir que debemos realizar una revisión *de novo* y examinar el expediente de la manera más favorable a la parte que se opuso a la moción de sentencia sumaria en el foro primario, haciendo todas las inferencias permisibles a su favor. *Banco Popular de Puerto Rico*, v. *Zorrilla Posada y otro*, 2024 TSPR 62; *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico,* 212 DPR 335, 353 (2023)*; Meléndez González et al v. M Cuebas*, 193 DPR 100, 118 (2015).

Nos toca analizar los documentos que acompañan la moción que solicita la sentencia sumaria y los documentos incluidos con la moción en oposición, y aquéllos que obren en el expediente del Tribunal; con el fin de determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *S.L.G. v. S.L.G.*, 150 DPR 171, 193 (2000). Si de los documentos surge duda sobre la existencia de una controversia de hechos, éstas se deben resolver contra el promovente, ya que este mecanismo procesal no permite que el Tribunal dirima cuestiones de credibilidad. *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020). Este foro intermedio tampoco puede adjudicar los hechos materiales y esenciales en disputa, ya que esa tarea le corresponde al foro de primera instancia. *Vera v. Dr. Bravo*, 161 DPR 307, 335 (2004). En fin, nuestra evaluación está limitada a la consideración de la evidencia que las partes presentaron ante el foro de primera instancia. Debemos revisar que los escritos cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Además, verificamos si en realidad existen hechos materiales en controversia. Finalmente, de encontrar que los hechos materiales realmente están incontrovertidos, revisamos si la primera instancia judicial aplicó

correctamente el derecho a la controversia. *Meléndez González et al. v. M. Cuebas, supra*, págs. 118-119.

**III.**

En el caso ante nuestra consideración, el foro recurrido, emitió una "*Resolución y Orden*" mediante la cual determinó que existían cuestiones de credibilidad y hechos en controversia que impedían la disposición sumaria del asunto.

Tras una revisión de *novo* de la totalidad del expediente ante nuestra consideración, concluimos no expedir el auto de *certiorari* presentado. Ciertamente CCA comparece de la denegatoria de una moción dispositiva, lo cual cumple con los parámetros de revisión de la Regla 52.1, *supra*. Sin embargo, al ejercer la discreción que se nos ha conferido al amparo de la Regla 40, *supra*, determinamos que el presente recurso no reúne los criterios necesarios para su expedición. La decisión recurrida no es contraria a derecho y tampoco ha mediado prejuicio, parcialidad o error manifiesto en la evaluación que realizó el foro recurrido sobre la prueba documental. En vista de ello, nos abstenemos de intervenir en los méritos del dictamen recurrido.

**IV.**

Por los fundamentos expuestos, *denegamos* la expedición del recurso de epígrafe a tenor de lo dispuesto en la Regla 40, *supra*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones